UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ERIC MARTIN,

          Petitioner,

v.                                          Case No. 2:07-cv-019

                                              HON. ROBERT HOLMES BELL

GREG MCQUIGGIN,

          Respondent.

_____/


## REPORT AND RECOMMENDATION

      Petitioner Eric Martin filed this petition for writ of habeas corpus challenging the validity of his conviction for perjury, in violation of MCL § 750.422. Petitioner was convicted by a jury on February 19, 2004, and on May 7, 2004, was sentenced to a prison term of twenty-nine months to fifteen years, to run consecutively with the sentence he was serving at the time of the charged offense. Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

      Petitioner has raised the following issues in his petition:

I. Defendant's conviction should be overturned and the case dismissed because Defendant was selectively prosecuted with animus in violation of Defendant's equal protection rights.

II. Defendant's conviction should be reversed as the prosecution failed to present legally sufficient evidence that Mr. Martin's alleged perjurious statement was material to the motion to disqualify Judge Hood.

III. Defendant's conviction should be reversed and the case remanded for a new trial because the trial court abused its discretion and violated Defendant's due process right to a fair and impartial trial by shackling and gagging Defendant in the presence of the jury.

While awaiting trial for assault of a prison employee, petitioner filed a motion to disqualify the trial judge. At the disqualification hearing, while testifying under oath, petitioner was asked if he had seen the judge having coffee and donuts with the warden and prison guards, an allegation raised by petitioner in his motion, to which petitioner answered "yes." The judge denied having coffee and donuts with the warden and requested that a perjury investigation be completed. As a result, petitioner was arraigned on perjury charges on March 10, 2003.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

- 3 -

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989),

*cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by

a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption

of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*,

161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

      Petitioner argues that his equal protection rights were violated when he was

selectively prosecuted with animus.  In analyzing this claim, the Michigan Court of Appeals noted:

> To support his claim that he was singled out, defendant argues that
> Michigan has long recognized that witnesses lie while testifying
> under oath, and only twenty-four out of more than 8,300 Michigan
> appellate cases decided since 1992 involved charges of perjury.
> However, defendant's statistics do not demonstrate that he was
> singled out for prosecution.  See, for example, *People v. Conat*, 238
> Mich. App. 134, 156 (1999) (defendants were required to demonstrate
> that 'the prosecutor, on the basis of impermissible factors, decided to
> charge as adults certain individuals who committed certain crimes
> and to charge as juveniles other juveniles who committed the same
> crimes').  Defendant's statistics here do not indicate how many
> individuals willfully gave false testimony in a court proceeding, but
> who were not prosecuted.  '[T]he mere fact that some persons are
> charged differently from others for the same conduct does not violate
> equal protection.' *Id.* at 156-157, citing *People v. Maxson*, 181 Mich.
> App. 133, 134-135 (1989).  Moreover, defendant's assertion - that the
> directly contradictory testimony of two witnesses clearly indicates
> that one of the witnesses is lying - ignores the fact that the court
> generally is not clearly aware which witness is lying, while in the
> instant case, the judge knew for certain that defendant was lying
> because defendant was lying about the judge's actions.
>
> Furthermore, defendant is unable to meet the second part of the test.
> Prisoners are not a suspect classification. *People v. Sleet*, 193 Mich.
> App. 604, 606 (1992).  And lying in court constitutes a felony
> offense, MCL 750.422, not the exercise of a fundamental right.  With
> respect to defendant's argument that he was prosecuted because the
> judge harbored personal animus toward him, defendant claims the
> judge became personally upset by defendant's coffee and donut

allegation.  However, the testimony indicates that the judge suggested a perjury investigation on proper grounds rather than any personal animus.

*Michigan v. Martin*, No. 255869, at 2 (Mich. App. June 14, 2005).

The United States Supreme Court has held that selective prosecution claims must be judged under ordinary equal protection standards requiring a petitioner to show both that the decision to prosecute a specific crime had a discriminatory effect and that it was motivated by a discriminatory purpose.  *Wayte v. United States*, 470 U.S. 598, 608 (1985).  To prove his equal protection claim, a petitioner must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Petitioner has not made such a showing in this case.  Petitioner has failed to show that he was selectively prosecuted while others who are similarly situated were not.  Therefore, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In his second claim, petitioner argues that the prosecution failed to present legally sufficient evidence to convict petitioner of perjury.   Specifically, petitioner argues that the prosecution failed to demonstrate that petitioner's allegation was material to judge's decision whether or not to disqualify himself.  The Michigan Court of Appeals disagreed, finding the statement to be material:

> [W]e find that the statement was material.  A statement is material if it could have affected the outcome of the proceeding.  *People v. Kozyra*, 219 Mich. App. 422, 432 (1996).   In a judicial

- 5 -

disqualification proceeding, a judge must be disqualified when 'the judge is personally biased or prejudiced for or against a party or attorney.' MCR 2.003(B)(1). The personal bias must be actual and stem from an extrajudicial source. *Cain v. Dep't. Of Corrections*, 451 Mich. 470, 495 (1996). From the allegation in defendant's affidavit, a reasonable inference could be drawn that the judge engaged in ex parte communications with the victims. Code of Judicial Conduct, Canon 3A(4) provides that a judge shall not engage in ex parte communications subject to several exceptions that do not apply to defendant's allegation.

\* \* \*

Thus, defendant's allegation, if true, could have required the judge to raise the ex parte communication issue before the parties and, unless the parties agreed, to disqualify himself pursuant to MCR 2.003(D). Given the fact that defendant sought the judge's disqualification, it is unlikely that defendant would have agreed that the judge should not be disqualified. Thus, the allegations, if true, could have affected the outcome of the proceeding and were material. *Kozyra, supra* at 432.

*Michigan v. Martin*, No. 255869, at 3-4.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id*. It is clear that the evidence was sufficient to establish that petitioner's statement was material. As the Michigan Court of Appeals explained, an allegation of an ex parte communication, unless waived, could have led to the judge's required disqualification. As the Michigan Court of Appeals further explained, it is unlikely that petitioner would have waived the ex parte communication, since he was the one bringing the motion for the judge's disqualification. Therefore, the evidence was sufficient to establish that petitioner's statement was material. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly

- 6 -

established federal law as determined by the Supreme Court of the United States; or result in a

decision that was based upon an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.

In his third claim, petitioner argues that the trial court abused its discretion and

violated petitioner's due process rights by shackling and gagging petitioner during his trial.  With

respect to the shackling of petitioner, the Michigan Court of Appeals found that shackling was

appropriate, and was not an abuse of discretion:

> In the instant case, the prison's records custodian testified that
> defendant was originally imprisoned in 1994 for larceny from a motor
> vehicle.  In 1995, defendant was convicted of carrying a concealed
> weapon while in prison.  During defendant's ten-year incarceration,
> he was cited for 246 misconducts of which forty-six involved
> threatening behavior, twenty-six involved assaults on personnel, and
> 'several' involved possession of homemade prison weapons.
>
> Defendant had been in segregation since August 1996, because he
> was considered a danger to himself and the prison population, and he
> had been on trial for throwing feces at two guards when the instant
> perjury offense occurred.  The court noted defendant's record, as well
> as the demonstrated disrespect when defendant refused to stand at the
> beginning of the proceedings, and ordered defendant shackled.  A
> trial court's decision to shackle a defendant is amply supported by the
> record when a defendant has an extensive prison misconduct record
> demonstrating his lack of respect for authority, his inability to
> conform behavior to accepted norms, and his tendency toward
> violence.  *People v. Dixon*, 217 Mich. App. 400, 405 (1996).
> Moreover, the court took care to limit any prejudice when it
> specifically instructed the jury not to draw any conclusions from the
> fact that defendant was shackled.  Therefore, the court did not abuse
> its discretion.

*Michigan v. Martin*, No. 255869, at 4.

A petitioner is obligated to show prejudice when he claims that the jury observed him

in shackles during trial.  *United States v. Mayes*, 158 F.3d 1215, 1225 (11th Cir. 1998); *United States*

*v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000) (Juror's observation of defendant in shackles did not

require reversal where defendant could show no actual prejudice).  Petitioner has failed to show that he was prejudiced.  In the opinion of the undersigned, the Michigan Court of Appeals' decision concerning the shackling of petitioner was not unreasonable.

With respect to the gagging, the Michigan Court of Appeals also found that the decision to gag petitioner was not an abuse of discretion requiring reversal:

> In the instant case, defendant interrupted the court thirty-five times during the court's initial instructions to the jury.  The court had the jury removed, then admonished defendant and threatened to exclude him.  This indicated that the court was aware of the option of excluding defendant from the proceedings.  During the court's discussion with defendant and counsel, defendant made six more comments indicating his unwillingness to cooperate.  During defense counsel's opening arguments, defendant interrupted another six times.  When asked if he was able to continue, defense counsel responded, 'You know, I'm in a delicate position there.  It's my client, I want him in the courtroom, but he is . . .'.  This was some indication that defense counsel did not want defendant excluded from the courtroom.  The court dismissed the jury a second time and informed defendant that he would be gagged if he did not cooperate.  To which defendant replied, 'Power of the stone.'  Defendant aptly demonstrated his obstreperousness.

> Given defendant's complete lack of cooperation, it was appropriate for the court to take some sort of action to maintain control of the proceedings.  *Illinois v. Allen*, 397 U.S. 337, 343-344 (1970).  Because defendant was already in prison and was facing another prison sentence, it is highly unlikely that holding defendant in contempt would have been effective.  *Id.* at 345.  When the jury was brought in, the court's comments to the jury indicated it considered gagging defendant to be less prejudicial than excluding defendant.  Moreover, the court reaffirmed this when it addressed defendant's motion for a mistrial the following day.

> To address the concerns raised by the United States Supreme Court with respect to gagging, defendant's ability to communicate with counsel was no less limited than if he had been removed from the proceedings.  Moreover, it is hard to imagine how seeing defendant gagged would be more of an affront to the court's dignity or affect the jury's feelings toward defendant more than defendant had already

- 8 -

done with his forty-one comments in front of the jury, primarily about leprechauns turning everyone into stone.

The United States Supreme Court has held that a defendant can lose his right to be present at trial if, after having been warned by the judge, he "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. 337, 343 (1970).  When handling an "obstreperous" defendant, a trial court has the following options: "(1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *Id*. at 344.  While gagging a defendant restricts "one of the defendant's primary advantages of being present at trial, his ability to communicate with his counsel," there are situations where "binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as [the defendant in *Illinois v. Allen*] did here." *Id*. at 344.  In the end, the United States Supreme Court noted that "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id*. at 343.

In holding that the gagging of petitioner was not an abuse of discretion depriving him of a fair trial, the Michigan Court of Appeals did not reach a decision that was unreasonable.  The Michigan Court of Appeals noted reasons why the alternative options of removing petitioner or finding him in contempt of court were not chosen.  The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong.  With regard to his selective prosecution claim, petitioner has failed to show that his equal protection rights were violated.  Moreover, petitioner has failed to show that his perjury conviction resulted from insufficient evidence of the materiality of his statement.  In addition, petitioner has failed to show that his due process rights were violated when he was shackled and gagged during his trial.  Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  June 1, 2009