UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC MARTIN,

    Petitioner,

v.                                          CASE NO. 2:07-CV-019

GREG MCQUIGGIN,                HON. ROBERT HOLMES BELL

    Respondent.
_____/

# MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on a habeas corpus petition filed by Petitioner Eric Martin pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) On June 1, 2009, Magistrate Judge Timothy P. Greely issued a Report and Recommendation ("R&R"), recommending that this Court deny the petition. (Dkt. No. 64.) Petitioner filed objections to the R&R on June 18, 2009. (Dkt. No. 65.) This Court must review de novo those portions of the R&R to which specific objection has been made, and may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Through this habeas petition Petitioner seeks to vacate a perjury conviction obtained against him. The conviction stems from statements made by Petitioner under oath during an August 12, 2002, hearing held in front of Judge Garfield Hood of

Michigan's 12th Circuit Court on Petitioner's motion to disqualify Judge Hood from presiding over an assault charge against Petitioner. During that hearing Petitioner testified that he had seen Judge Hood having coffee and donuts with the two victims of Petitioner's alleged assault (the "August 12 statements"). In a trial held before Judge Weber on the perjury charge, in which Judge Hood and several other witnesses testified, a jury concluded that the August 12 statements were false and constituted perjury.

Petitioner's first objection is not an objection at all but a new argument not included in Petitioner's original habeas petition. Petitioner argues that the jury believed Judge Hood's testimony that he had not shared coffee and donuts with the victims "just because he's a judge," and that as a result Petitioner was denied his Fourteenth Amendment due process right to an impartial decision-maker. While the Supreme Court has held that the Due Process Clause requires an impartial judge, *see Tumey v. Ohio*, 273 U.S. 510 (1927), the Sixth Amendment is the constitutional provision that vests Petitioner with the right to an impartial jury, the right that Petitioner is invoking here. U.S. Const. amend. VI. However, jurors are not only permitted but encouraged to assess the credibility of witnesses. *United States v. Bailey*, 444 U.S. 394, 414 (1980) ("The Anglo-Saxon tradition of criminal justice, embodied in the United States Constitution and in federal statutes, makes jurors the judges of the credibility of testimony offered by witnesses."). Petitioner presents no evidence that the jury based its decision on any improper information. In addition, Petitioner presents no evidence that the jury actually

did credit Judge Hood's testimony "just because he's a judge," or that the jury even credited Judge Hood's testimony at all. Petitioner refers only to the fact that the jury's ultimate decision was consistent with Judge Hood's testimony, but there was substantial other evidence that the jury could have used to support its decision without even considering Judge Hood's testimony.

Second, Petitioner objects to the Magistrate Judge's determination that he did not establish his claim of selective prosecution. The Court agrees with the Magistrate Judge. A rational basis review applies to Petitioner's class-of-one claim that he was selectively prosecuted for perjury in violation of his Fourteenth Amendment right to equal protection. *Wayte v. United States*, 470 U.S. 598, 608 (1985). Thus, Petitioner must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Petitioner's claim fails because he cannot show that others similarly situated to him have been treated differently. The universe of individuals that are similarly situated to Petitioner is not, as Petitioner suggests, all those that have given sworn testimony in the state of Michigan. Rather the universe of individuals that are similarly situated to Petitioner is all those that have given sworn testimony in the state of Michigan, and the evidence that the sworn testimony is false is as strong as the evidence that Petitioner's August 12 statements were false. The Court does not dispute Petitioner's assertions that many witnesses likely do lie under oath and that not many are prosecuted,

but the prosecutor does not always have sufficient evidence to make prosecution worthwhile. In Petitioner's case, the prosecution had substantial evidence that the August 12 statements were not true, including the first-hand knowledge of the judge presiding over the proceeding in which the statements were made, and Petitioner cannot succeed on his equal protection claim without demonstrating that others that have made statements under oath in the face of contrary evidence of equal convincing force were not prosecuted.[1] This Petitioner has failed to do.

Petitioner next objects to the Magistrate Judge's determination that there was sufficient evidence to convict Petitioner of perjury. The Supreme Court has held that there is no due process violation for lack of sufficient evidence as long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). At the time of Petitioner's perjury conviction, one essential element of the crime was that the allegedly untrue statement be material, meaning it "could have affected the course or outcome of the proceeding." *People v. Kozyra*, 556 N.W.2d 512, 516 (Mich. Ct. App. 1992). Petitioner alleged improper ex

---

[1] Even if a Michigan county prosecutor did decline to bring perjury charges against an individual that made a statement under oath contradicted by evidence as compelling as the evidence contradicting Petitioner's August 12 statements, there might still be a "rational basis" for the disparate treatment. For example, a prosecutor may decide to prosecute one individual, but not a "similarly situated" individual, because his workload permitted him to pursue the former but not the latter. *See Vill. of Willowbrook*, 528 U.S. at 564. Prosecutors are given a great deal of discretion in deciding when to bring charges. *Wayte v. United States*, 470 U.S. 598, 607 (1985).

4

parte contact between Judge Hood and the victims of Petitioner's assault during a proceeding to determine whether Judge Hood should disqualify himself from presiding over Petitioner's assault charge. Under Michigan law, a judge should disqualify himself if the judge is biased in favor of one party. Mich. Ct. R. 2.003. Subject to a few exceptions, judges should not engage in ex parte communications, as they may lead a judge to become biased in favor of one party. Code of Judicial Conduct, Canon 3A(4).

Petitioner argues that Judge Hood knew that he did not have donuts and coffee with the victims, and that, as a result of this personal knowledge, he would not have recused himself for having impermissible ex parte communications. Petitioner argues that, because the statements would not have led Judge Hood to recuse himself, they "could [not] have affected the course or outcome of the [disqualification] proceeding," and thus they were not material. Petitioner's argument is creative, but it must fail. Even though the August 12 statements likely would not have led Judge Hood to recuse himself because he knew they were not true, an appellate panel reviewing Judge Hood's decision not to disqualify himself cannot be said to have the same personal knowledge of the facts. It may have given probative value to Petitioner's August 12 statements, which were, after all, made under oath. If an appellate panel did, in fact, afford probative value to Petitioner's August 12 statements, even if Judge Hood himself did not, the statements could have "affected the course or outcome of the proceeding," because the appellate panel could have decided to disqualify Judge Hood on account of the statements. For this

5

reason, the August 12 statements were undoubtedly material to the question of whether Judge Hood should disqualify himself. A rational juror could have made this determination in light of the evidence presented.

Petitioner also argues that no rational juror could have convicted him for perjury because one "essential element" of the crime is that the allegedly untrue statement be made under oath, and that the affidavit that contained the untrue allegations that formed the basis for Petitioner's perjury charge was not verified by oath. However, the basis of the perjury charge was not statements made in an affidavit, but statements made in open court on August 12, 2002. (Dkt. No. 40, Arraignment Tr. 3.)

Finally, Petitioner objects to the Magistrate Judge's determination that the trial court did not violate Petitioner's constitutional rights by shackling and gagging him during trial. Under Supreme Court precedent, shackling is discouraged, but permitted in certain extreme circumstances. *Deck v. Missouri*, 544 U.S. 622, 624 (2005) ("[T]he Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, unless that use is 'justified by an essential state interest'—such as the interest in physical security, escape prevention, or courtroom decorum—specific to the defendant on trial."); *Illinois v. Allen*, 397 U.S. 337, 344 (1970) ("[N]o person should be tried while shackled . . . except as a last resort."). The trial judge's decision to shackle Petitioner was based on the judge's review of Petitioner's prison management record, which included 246 citations for misconduct, and the judge's determination that Petitioner

"is a potential danger to the staff of the court, to the people in the court, [and] to the jury." (Dkt. No. 48, Trial Tr. Vol. I, at 10.) The safety of the public and court staff is undoubtedly a sufficient reason to depart from the general rule against shackling, and safety was a legitimate concern in this matter. Petitioner has not demonstrated that the trial court's decision to shackle him was contrary to established Supreme Court precedent.

In addition, the trial court's decision to gag Petitioner was not contrary to established Supreme Court precedent. The Supreme Court has explicitly permitted trial courts to gag obstreperous defendants as an often preferable alternative to removing the defendant from the proceedings altogether. *Allen*, 397 U.S. at 343-44. As the Michigan Court of Appeals noted, during jury instructions and opening arguments Petitioner interrupted court at least forty-one times, most of his interruptions referring to leprechauns and turning everyone into stone. Petitioner's actions were undoubtedly disruptive enough to justify the trial judge's decision to gag him. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's objections to the report and recommendation (Dkt. No. 65) are **DENIED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's report and recommendation (Dkt. No. 64) is **APPROVED** and, combined with the discussion set forth herein, **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

Dated: March 8, 2010 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE